469-09/PJG/EJC
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff's
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski
Edward J. Carlson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
FLORIDA OOO,

Plaintiff,

-against-

AETEA SIERRA MARITIME COMPANY LIMITED, THESARCO SHIPPING CO. S.A., ARGOSY SHIPMANAGEMENT INC., MR. EVANGELOS SARAVANOS, and the M/V VINYDREA

Defendants,

and

INT'L PROJECT CONSULTING GROUP INC a/k/a INTERNATIONAL PROJECT CONSULTING GROUP,

as Paying Agent.

---------------------------------------------------------x

**09 Civ. 6524 (GBD)**

**AMENDED VERIFIED COMPLAINT**

Plaintiff Florida OOO ("Florida"), by its attorneys Freehill Hogan & Mahar, as and for its Amended Verified Complaint against Defendants Aetea Sierra Maritime Company Limited ("Aetea Sierra"), Thesarco Shipping Co. S.A. ("Thesarco"), Argosy Ship Management Inc. ("Argosy"), and Mr. Saravanos (collectively "the Defendants"), and Int'l Project Consulting Group Inc (Int'l Project) as Defendants' paying agent, alleges as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for breach of maritime contracts (including bills of lading and/or incorporated charter parties) and for the maritime tort of conversion of property being transported by sea. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq*. and/or the Federal Arbitration Act. 9 U.S.C. §1 *et seq*.

**THE PARTIES**

2. At all times material hereto, Plaintiff Florida was and still is a business entity duly organized and existing under the laws of a foreign country with an address at 10 Paveletzkaya Naberezhnaya Street, Building 3, Moscow, Russia 113114. Plaintiff Florida is the corporate successor of Dominik OOO, who was the receiver of the subject cargo.

3. At all times material hereto, Defendant Aetea Sierra was and still is a foreign business entity organized and existing under the laws of a foreign country with an address at Clifton House, 75 Forts Street, George Town, Grand Cayman, Cayman Islands. Defendant Aetea Sierra was and still is the owner of the M/V AETEA SIERRA.

4. At all times material hereto, Defendant Thesarco was and still is a foreign business entity organized and existing under the laws of a foreign country with an address at 99 Akti Miaouli, Piraeus, Greece 185 38. Defendant Thesarco was and still is the agent and beneficial owner of the M/V AETEA SIERRA.

5. At all times material hereto, Defendant Argosy was and still is a foreign business entity organized and existing under the laws of a foreign country with an address at 99 Akti Miaouli, Piraeus, Greece 185 38. Defendant Argosy was and still is the alter ego of Defendants Aetea Sierra and Thesarco.

6. At all times material hereto, Defendant Mr. Saravanos was the CEO of Defendant Argosy, the managing director of Defendants Aetea Sierra and Thesarco, and was and still is an individual with a business address at 99 Akti Miaouli, Piraeus, Greece 185 38. Defendant Saravanos dominates and controls the other Defendant entities.

7. At all times material hereto, Defendant M/V VINYDREA is the current trading name of the M/V AETEA SIERRA, which is currently positioned off the coast of Greece.

8. At all times material hereto, Int'l Project was and still is the paying agent of Defendants with an address at Piraeus, Greece.

## THE NATURE OF THE CLAIM

9. On or about December 28, 2006, an entity named Galvanized Steel Consumer Association ("GSCA") purchased 2,673 coils of Chinese-made steel from a company in Taiwan for $11,924,583.48 on FOB basis. The commercial invoices for the steel are attached as Exhibit A.

10. GSCA chartered the M/V AETEA SIERRA from Defendant Aetea Sierra to carry the steel by sea from Changshu, China for delivery to consignee Plaintiff Florida OOO's predecessor, Dominik OOO, at St. Petersburg, Russia. Copies of the bills of lading for the cargo are attached as Exhibit B.

11. The M/V AETEA SIERRA departed Changshu, China for the voyage to St. Petersburg on January 12, 2007 and soon thereafter GSCA paid full freight in the amount of $1,251,377.90 to Defendant Aetea Sierra. The freight invoice is attached as Exhibit C.

12. Payment was made via a wire transfer to Defendants' paying agent Int'l Project in Piraeus, Greece. An email from Defendant Thesarco confirming receipt of the freight payment to Int'l Project is attached as Exhibit D.

13. When the vessel failed to arrive at St. Petersburg when due, on or about April 4, 2007, GSCA commenced a series of communications with Defendant Thesarco expressing concern about the whereabouts of the cargo and the M/V AETEA SIERRA.

14. Defendant Thesarco advised in response that the vessel had been delayed due to a lack of certification necessary to traverse the Suez Canal.

15. Via a series of email exchanges in April and May, 2007, Defendant Thesarco informed Plaintiff that the M/V AETEA SIERRA was steaming to St. Petersburg and confirmed that the vessel would arrive on June 10, 2007.

16. However, despite Defendant Thesarco's repeated assurances that the M/V AETEA SIERRA would arrive in St. Petersburg on June 10, 2007, the cargo never reached its destination because a Swiss commodities broker had arrested the M/V AETEA SIERRA in Algeria.

17. Rather than pay and/or secure the Swiss broker's claim to release the M/V AETEA SIERRA from arrest, Defendant Thesarco opted to allow the arrest to continue and contest the arrest in court in Algeria.

18. During the course of this litigation, the Algerian court imposed numerous delays on the proceedings, and the vessel incurred considerable debts to the Algerian port agents who supplied the vessel with fuel, food and other necessaries.

19. Defendants' inability to pay these debts owed to Algerian port agents resulted in additional arrests of the vessel by those agents.

20. As the result of the numerous arrests, the M/V AETEA SIERRA languished in Algeria for two years with Plaintiff's cargo still on board the vessel.

21. During this time, the Ukrainian and Greek crews of the vessel commenced sending SOS messages to Greek newspapers and to the Panamanian and Ukrainian embassies in Algeria alleging that Defendant Saravanos had abandoned the crew and the ship.

22. In particular, the master alleged that the vessel was without fuel and the crew without edible food and potable water, and that the crew had begun to riot. *See* SOS messages dated February 29, 2008 and June 9, 2008 at Exhibits E and F.

23. Allegations were also made that Defendant Saravanos delivered rotten food to the vessel and that members of the crew had contracted dysentery.

24. During the arrest, numerous attempts to discharge the cargo at Algeria were made, which attempts Defendant Saravanos repeatedly thwarted by instructing his crew not to release the cargo.

25. As a result of Defendant Saravanos' obstruction, an appeal was filed with the Algerian court to direct police officers to enforce the unloading of the cargo from the vessel onto another vessel procured and berthed alongside the M/V AETEA SIERRA, which application was granted by the Algerian court.

26. The Algerian court denied Defendant Saravanos' numerous requests to suspend the unloading of Plaintiff's cargo from the vessel.

27. Algerian bailiffs boarded the vessel to execute the order that the cargo be unloaded from the ship, but were met with stiff resistance from the master of the vessel who refused to allow the cargo based upon orders he received from Mr. Saravanos.

28. The Bailiffs subsequently appealed to the Algerian court to order the use of police force to unload the vessel.

29. However, while that application was being made for the use of force to unload the vessel, the appellate-level court in Algeria overruled the decision of the lower court ordering the unloading of the cargo and released the vessel from arrest.

30. The M/V AETEA SIERRA has since disembarked from Algeria and is now named the M/V VINYDREA, which is presently positioned near Greece. A copy of the vessel's identification details is attached at Exhibit G.

## THE NATURE OF THE ALTER-EGO AND PAYING AGENT ALLEGATIONS

31. Defendants Thesarco, Argosy, and Aetea Sierra constitute one entity that owns, operates, and/or manages the M/V AETEA SIERRA / M/V VINYDREA.

32. In order to receive payments resulting from the chartering of its vessel, the Defendants direct charterers to transfer funds to the US Dollar account of its paying agent, Int'l Project Consulting, in Piraeus, Greece.

33. For instance, the freight invoice GSCA received from Defendant Aetea Sierra for the transportation of Plaintiff's steel from China to Russian directed GSCA to make payment to the US dollar account of Int'l Project Consulting, which payment GSCA did in fact make.

34. It is not the general practice in the maritime community, nor in any other business, for independent companies to make or receive large payments on behalf of other independent companies.

35. As such, Int'l Project Consulting is the paying agent of the Defendants as it receives and transfers funds on their behalf.

36. Regarding the relationship amongst the alter-ego defendants, Mr. Evangelos Saravanos is the CEO of Defendant Argosy and the managing director of Defendants Thesarco and Aetea Sierra.

37. Defendant Saravanos dominates and disregards these Defendant entities' corporate forms to the extent they are actually carrying on the business and operations of Defendant Saravanos as if all the entities were the same, and vice versa.

38. Defendants Thesarco, Argosy, and Aetea Sierra have no independent identities separate from Defendant Saravanos and are managed and operated as one company under the dominion and control of Defendant Saravanos.

39. Defendants Argosy and Thesarco's core operations are conducted from identical addresses in Piraeus, Greece, with Defendants Thesarco, Argosy and Mr. Saravanos sharing the same telephone numbers and the same fax numbers.

40. Specifically, the address and telephone and fax numbers in Piraeus, Greece given on Mr. Saravanos' business card as CEO of Defendant Argosy are the same address and telephone and fax umbers listed for Defendant Thesarco in the 2009 Greek Shipping Directory. (*See* business card at Exhibit H. *See* Copy of Shipping Directory at Exhibit I.)

41. The Greek Shipping Directory also establishes that Defendant Thesarco is the beneficial owner of the M/V AETEA SIERRA.

42. In April 2007, when the delivery of Plaintiff's cargo in St. Petersburg failed to occur, Plaintiff's communicated directly with Defendant Thesarco regarding the location of the vessel and its cargo.

43. When representatives of the United Nations' International Labor Organization contacted the owners of the M/V AETEA SIERRA regarding the plight of the seafarers abandoned in Algeria, they reported that they contacted owners "Argosy/Thesarco" (See I.L.O. report at Exhibit J).

44. When Plaintiff's attempted to unload their cargo at Algeria, the captain refused to do so upon the orders of Defendant Saravanos.

45. Throughout the course of the saga involving the M/V AETEA SIERRA, the breaches of the bills of lading and the charter party were committed by the charterer, Defendant Aetea Sierra, for failing to deliver the cargo, by Defendant Thesarco, as the beneficial owner of the vessel, and by Mr. Savaranos, as the owner and/or director of the Defendants for failing to secure the release of the vessel from arrest in Algeria and the ultimate conversion of Plaintiff's property.

46. Based on the foregoing, Defendants Saravanos, Thesarco, Argosy and Aetea Sierra should be considered a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the other, and all assets of Defendants together should be susceptible to attachment and/or restraint for the debts of Defendants Thesarco and Aetea Sierra.

**DAMAGES RESULTING FROM DEFENDANTS' BREACHES**

47. Defendants' breach of the bills of lading and charter party has resulted in damages to Plaintiff of at least $11,924,583.48, which sum totals the value paid for the cargo.

48. The charter party and the bills of lading, by way of incorporating the charter party, provide for the application of English law and any disputes arising thereunder are to be referred to arbitration in London.

49. Arbitration has commenced under the charter party and Defendants have been notified of the appointment of an arbitrator.

50. This action is brought to obtain security in favor of Plaintiff in respect to their claim against Defendants and in aid of the London Arbitration proceedings, and Plaintiff specifically reserves its right to arbitrate the underlying claims in that forum.

51. Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorneys' fees, arbitrators' fees, disbursements and interest are recoverable as part of Plaintiff's claim.

52. This action is further brought to obtain security for the additional sums which are recoverable including Plaintiff's anticipated attorneys' and arbitrators' fees and costs in the London arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

53. Plaintiff estimates, as nearly as can be presently computed, that the legal expenses and costs of prosecuting the claim in London arbitration will be $400,000 and interest on its damages is estimated to be $2,146,424.90 (calculated at the rate of 6% for a period of 3 years).

54. Defendants continue to actively charter vessels, engage in international trade, and conduct international business. In carrying out their international business activities, Defendants make and receive wire transfers in U.S. dollars, which almost invariably is the currency of

international maritime transactions, and was in fact the currency provided for in the subject contract.

## REQUEST FOR RULE B RELIEF

55. Upon information and belief, and after investigation, Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendants have, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendants (collectively hereinafter, "ASSETS), at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

56. The total amount to be attached pursuant to the calculations set forth above is **$14,471,008.38.**

WHEREFORE, Plaintiff prays:

a. That process in due form of law according to the practice of this Court may issue against Defendants citing them to appear and answer the foregoing or be defaulted;

b. That if Defendants cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendants up to and including **$14,471,008.38** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers,

accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred to, from or for the benefit of Defendants or any of them (collectively hereinafter, "ASSETS"), including any such assets as may be transferred in the name of Defendants' paying agent Int'l Project Consulting at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to an order compelling Defendants to arbitrate and/or the recognition and enforcement of any award or judgment entered against the Defendants or any subsequent enforcement-related relief as may be necessary; and

d. For such other, further and different relief as the Court may deem just and proper in the premises.

Dated: New York, New York
September 24, 2009

FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
Florida OOO

By: ______________________
Peter J. Gutowski
Edward J. Carlson
80 Pine Street
New York, NY 10005
(212) 425-1900

**ATTORNEY VERIFICATION**

State of New York )
) ss.:
County of New York )

EDWARD J. CARLSON, being duly sworn, deposes and says as follows:

1. I am an attorney with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff's in this action, I have read the foregoing Amended Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

Edward J. Carlson

Sworn to before me this
24th day of September, 2009

Notary Public

HAZEL S. ROSENTHAL
Notary Public, State of New York
No. 01RO4641178
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2010